UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-CV-62708-DPG

JODI FARRELL-CANIZARO
and KELLY SULLIVAN,
on behalf of themselves
and others similarly situated,

      Plaintiffs,

v.

BJ'S WHOLESALE CLUB, INC.,
a foreign profit corporation,

      Defendant.
_____/

## MOTION TO RE-OPEN CASE

Plaintiffs, JODI FARRELL-CANIZARO and KELLY SULLIVAN, (together, the "Named Plaintiffs"), as well as potential opt-in Plaintiffs YOLANDA BERRY, TARA BISAILLON, and MILEIDY BOBBINS, by and through their undersigned counsel, hereby file this Motion to Re-Open Case and in support thereof state:

## SUMMARY OF PLAINTIFFS' ARGUMENT

After this Court granted Defendant's Motion to Compel Arbitration [DE 12], the Plaintiffs filed demands for arbitration with the American Arbitration Association ("AAA"). However, Plaintiffs now return to this Court because arbitrations cannot commence: the AAA will not administer the arbitrations or appoint arbitrators due to Defendant's refusal to pay its contractually owed share of the filing fees and case management fees due to the AAA. As detailed herein, Defendant's refusal to pay its owed filing and case management fees is a clear material breach of the arbitration agreements each Plaintiff allegedly executed. As such, Defendant has waived its rights to arbitrate Plaintiffs' claims, and Plaintiffs are entitled to pursue their legal claims in this Court. Thus, Plaintiffs hereby move the Court to re-open the instant action, allow them to litigate their legal

1

claims, and to recover all attorneys' fees and costs they incurred in attempting to arbitrate.[1] [2]

## PROCEDURAL TIMELINE

1. Plaintiffs are all former store employees of Defendant BJ'S WHOLESALE CLUB, INC. (hereinafter "BJ's" or "Defendant"), a Massachusetts-based retailer which owns and operates over 185 retail consumer membership-only warehouse "clubs" or "superstores" in Florida and numerous other states.

2. On September 19, 2016, Named Plaintiffs' filed suit in Broward County Circuit Court, Seventeenth Judicial Circuit in and for Broward County, Florida, bringing claims under the Fair Labor Standards Act of 1938, as amended 29 U.S.C §201 *et seq.*, (hereinafter the "FLSA"), seeking to form a proposed collective action under 29 U.S.C § 216(b) and seeking recovery of unpaid wages, unpaid overtime wages, liquidated damages, declaratory relief and reasonable attorneys' fees and costs on behalf of the Named Plaintiffs, and other similarly situated current and former employees..

3. While the case was pending in Broward Circuit Court, opt-in Plaintiffs BERRY, BISAILLON, and BOBBINS filed Notices of Consent to join the action.

---

[1] Although this Court's paperless Order [DE 14] granting Defendant's Motion to Compel "dismissed" the instant action without prejudice, that dismissal effectively operates as a stay of this case under section 9 U.S. Code § 3 of the Federal Arbitration Act ("FAA"). <u>Thus, the Court could, if it chooses to, treat this Motion as being more or less equivalent to a motion to lift the "stay" that was put in place pending arbitration.</u>

[2] Plaintiffs reserve their right, should the Court grant this Motion, to seek a default judgment in this Court as to their claims. (Plaintiffs cannot seek a default judgment in arbitration because, due to Defendant's failure to pay its fees, no arbitrators have been appointed who can grant the default judgment. Where a respondent does not appear or pay its share of owed fees, "[th]ere is no AAA procedure for a default award." *District Court Properly Lifted Litigation Stay After Defendant's Default in Arbitration Proceedings: Tenth Circuit,* Practical Law Litigation (May 29, 2015) Thompson Reuters.

4. On November 16, 2016, Defendant removed Plaintiffs' case from Broward County Circuit Court to the Southern District of Florida pursuant to, *inter alia*, 28 U.S.C. § 1331, asserting original federal jurisdiction under the FLSA.

5. On December 16, 2016, Defendant filed a Motion to Compel Arbitration [DE 12], asserting that all five (5) plaintiffs had executed employer-promulgated agreements to arbitrate during their employment with Defendant, and that the FLSA claims brought were indeed subject to said arbitration agreements.

6. On December 30, 2016 the Court granted Defendant's Motion to Compel Arbitration [DE 14].

7. Thereafter, in accordance with defense counsel's instructions to undersigned counsel, <u>each</u> plaintiff filed a separate Demand for Arbitration with the AAA on October 27, 2017. All parties and the AAA agreed that the AAA's "Employment Rules" applied to any claims Plaintiffs brought in arbitration.

8. Pursuant to the AAA's Employment Rules, when a claimant brings an employment-related legal claim (which FLSA claims clearly are) pursuant to an employer-promulgated arbitration agreement (which the arbitration agreements at issue clearly are), the AAA requires a $300 filing fee from the employee/claimant and a $1,900 filing fee from the employer/respondent, as well as a $750 case management fee from the employer/respondent. *See AAA Employment/Workplace Fee Schedule, Costs of Arbitration as amended October 1, 2017*, attached hereto as Exhibit 1.

9. Following AAA's request for the parties to remit their respective owed fees, each of the five (5) claimants paid their $300 filing fee ($1,500 in total).

10. In addition to the fees being required under the AAA's Employment Rules and having been initially requested from the parties by the AAA when the demands for arbitration were

3

filed, the AAA sent out a letter to the parties on December 8, 2017 requesting payment of the filing fees. *See AAA letters of December 8, 2017,* attached hereto as Exhibit 2.

11. AAA followed up those letters with correspondence to Defendant on December 12, 2017, **demanding payment of the $1,900 filing fee in each case by December 20, 2017.** *See AAA letters of December 12, 2017,* attached hereto as Exhibit 3.

12. Defendant did not make payment of the owed fees by December 20, 2017, as required by the AAA. In fact, **to date Defendant has never remitted its owed filing fees or case management fees** to the AAA, which total **$13,250.00** (a $1,900 filing fee x 5 cases, plus a $750 case management fee x 5 cases).

13. On January 16, 2018, an AAA administrator sent an email to the parties indicating that "[t]he arbitrator selection process has not begun …. Once we have received payment of the Employer's filing fee for each matter, the filing fee requirements will have been met and we will proceed with administration accordingly." *AAA Erik Goss email of January 16, 2018,* attached hereto as Exhibit 4. Defendant did not respond to this email or make payment.

14. Additionally, Defendant has never filed or served any answer or responsive pleading to Claimants' demands for arbitration.[3]

---

[3] Although AAA Employment Rules do not require a respondent to provide an "answer" to a demand for arbitration, there is legal authority for the proposition that a default has occurred where

4

**MEMORANDUM OF LAW**

 **I.** **By Failing To Pay Its Arbitration Fees, Defendant Has Materially Breached the Arbitration Agreements at Issue and Waived Its Rights to Arbitration.**

**A.** **Governing Legal Standard.**

  The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In conformity with the FAA, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Inetianbor v. CashCall, Inc.,* 768 F.3d 1346, 1349 (11th Cir. 2014) (citations omitted). "Arbitration is a matter of contract" and "interpretation of an arbitration agreement is generally a matter of state law." *In re Checking Account Overdraft Litigation MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012). "We must interpret the agreement by reading the words of the contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *Inetianbor,* 768 F.3d at 1353 (citation and internal quotation marks omitted); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties.") (citation and internal quotation marks omitted). Because agreements to arbitrate stand on the same footing as other contracts, just like other contracts, if a party materially breaches an arbitration agreement, the non-breaching party is relieved of its obligations under the agreement.

  Notwithstanding the existence of a written arbitration agreement and a federal policy favoring arbitration, it is well-settled that "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *In re Checking Account Overdraft Litigation,* 754 F.3d at 1294 (11th Cir. 2014) (citation omitted).

---

a respondent provides **neither** an answer/ response **or** payment of owed filing fees. Plaintiffs will

To determine whether a party has waived its right to arbitrate, the Eleventh Circuit has developed a two-part test. "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of America, Inc.,* 286 F.3d 1309, 1315-16 (11th Cir. 2002) (internal quotation marks omitted). Second, the test looks at whether by doing so, that party "has in some way prejudiced the other party." *Id.* (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir. 1990).

**B.     BJ's has acted "inconsistently with the arbitration right."**

As explained above, the first prong of the Eleventh Circuit's test for whether a right to arbitrate has been waived is whether the party seeking to enforce arbitration "has acted inconsistently with the arbitration right."

Here, there is little doubt this prong is met. BJ's has not timely paid the AAA fees it owes under the very arbitration agreements it sought to enforce and the very agreements that it represented to this Court that it would honor when it sought to compel arbitration.

Defendant has not paid its fees despite ample opportunity to do so and multiple requests to do so from the AAA. Moreover, Defendant has not only ignored the requests for payment from the AAA, but it has not had even the courtesy to respond to the AAA.

Numerous courts have found that failure to pay arbitration fees is a material breach of an arbitration agreement and constitutes waiver of a right to arbitration.

For a very recent example, in *Roach v. BM Motoring, LLC,* 155 A.3d 985 (N.J. 2017), the Supreme Court of New Jersey held that that a defendant's refusal to advance arbitration fees as it was required to do under an arbitration agreement with plaintiffs was a material breach of the contract that precluded defendant from later trying to enforce the agreement.

---

address this issue in a future briefing once this Court re-opens the instant case.

Also recent and on point is *Spano v. V & J Nat'l Enters.,* LLC, 264 F. Supp. 3d 440 (WDNY 2017) in which the court held a defendant had waived its right to arbitrate by failing to timely pay its owed AAA arbitration fees.

*Spano* also contains a good analysis of *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. May 5, 2017), a case very similar to the one at bar:

> In making this argument Plaintiff relies heavily upon *Nadeau v. Equity Residential Props. Mgmt. Corp.,* No. 16 Civ 7986 (VB), 251 F. Supp. 3d 637, 2017 U.S. Dist. LEXIS 68937, 2017 WL 1842686 (S.D.N.Y. May 5, 2017). In *Nadeau*, the plaintiff filed a demand to arbitrate with the AAA pursuant to the arbitration agreement that existed between the plaintiff and the defendant. 2017 U.S. Dist. LEXIS 68937, [WL] at *2. The plaintiff paid her filing fee, but the defendant did not pay its filing fee, even after the defendant's legal department discussed the demand with the plaintiff on several occasions. *Id.* Within about six weeks after the AAA first informed the parties that it had received the plaintiff's payment but not the defendant's, the AAA administratively terminated the case and the plaintiff filed a class action suit against the defendant. Id. Although the AAA subsequently reopened the arbitration demand upon the defendant's late payment, *Nadeau* found that the defendant had materially breached the arbitration agreement by failing to timely pay the arbitration fee before the AAA closed the case, and, under New York contract law, was unable to now enforce it against the plaintiff See 2017 U.S. Dist. LEXIS 68937, [WL] at *3; *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir.) ("Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement"), cert. denied, 136 S. Ct. 373, 193 L. Ed. 2d 292 (2015).

*Spano*, 264 F. Supp. 3d at 454.

**C.     BJ's failure to pay its owed arbitration fees has prejudiced the Plaintiffs**

The second prong of the Eleventh Circuit's test for whether the right to arbitrate has been waived is whether the actions of those who have "acted inconsistently with the arbitration right," have prejudiced the other party(s) in some way.

Here, Plaintiffs have been prejudiced in several ways. First, their legal claims have been delayed and essentially halted for months by Defendant's conduct. Moreover, each Plaintiff has

7

spent $300 in filing fees, and undersigned counsel has incurred a great deal of time and aggravation in addressing Defendant's seemingly bad faith pursuit of arbitration.

Additionally, several courts have correctly observed that if a defendant/respondent is permitted to pay its arbitration fees significantly late and after the issue has been brought to a court's attention, it would improperly incentivize parties to strategically delay payment of their arbitration fees. As explained in *Spano*:

> In *Nadeau,* the court indicated that to find the defendant's breach of contract immaterial "would set up a perverse incentive scheme contrary to the FAA and common sense. . . ." *Nadeau,* 2017 U.S. Dist. LEXIS 68937, 2017 WL 1842686, at *3. Employers . . . would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings. The Court finds this rationale applicable to the instant matter.

*Spano*, 264 F. Supp. 3d at 458 (internal citations omitted).

The *Spano* court observed that a delay in payment of arbitration fees by a respondent was by itself prejudicial to a claimant. "[D]espite Defendants' contention to the contrary, it cannot be said that Plaintiff has suffered no prejudice as a result of Defendants' actions. Defendants argue that any breach of the Agreement was not material as little-to-no prejudice resulted from their purportedly "short delay" in paying the AAA filing fee. The Court disagrees. The two-month delay in payment after receipt of several AAA letters requesting participation strongly suggests a deliberate strategy unilaterally designed to delay the arbitration proceedings." *Id.* at 457 (internal quotations omitted).

This sound rationale should be applied here, and the Court should find that Defendant has waived its right to arbitration.

**WHEREFORE,** Plaintiffs request that the Court deem Defendant to have breached the arbitration agreements at issue and to have waived its rights to arbitration of Plaintiffs' claims. Plaintiffs' also request compensation for the attorneys' fees and costs they incurred in any manner

8

associated with having wasted resources and time in addressing Defendant's bad faith arbitration gambit, and any and all further relief that this Court determines to be just and appropriate.

Dated: January 29, 2018
Boca Raton, Florida

Respectfully submitted,

BY: *s/Dion J. Cassata*
Dion J. Cassata
Fla. Bar No. 672564
*dion@cassatalaw.com*

CASSATA LAW, P.A.
Boca Crown Centre
7999 N. Federal Highway, Suite 200
Boca Raton, Florida 33487

Telephone: (954) 364-7803
Facsimile: (954) 251-4787

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2018 I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Southern District of Florida using the Court's Case Management/Electronic Case Filing (CM/ECF) system. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified.

By: *s/Dion J. Cassata*
Dion J. Cassata

**SERVICE LIST**

*FARRELL-CANIZARO, et al. v. BJ'S WHOLESALE CLUB, INC.,*
CASE NO: 16-CV-62708-DPG

| | |
|---|---|
| Dion J. Cassata, Esq.<br>*dion@cassatalaw.com*<br><br>Cassata Law, P.A.<br>Boca Crown Centre<br>7999 N. Federal Highway, Suite 200<br>Boca Raton, FL 33487<br><br>Telephone:  (954) 364-7803<br>Facsimile:   (954) 251-4787<br><br>[Counsel for Plaintiff] | Holly L. Griffin, Esq.<br>G. Joseph Curley, Esq.<br>*jcurley@gunster.com*<br>hgriffin@gunster.com<br><br>Gunster, Yoakley & Stewart, P.A.<br>777 S. Flagler Drive, Suite 500 East<br>West Palm Beach, FL 33401<br>Telephone:  (561) 655-1980<br>Facsimile:   (561) 655-5677<br><br>[Counsel for Defendant] |
| | M. Amy Carlin, Esq.<br>(*Pro hac vice*)<br>acarlin@morganbrown.com<br>MORGAN, BROWN & JOY, LLP<br>200 State Street, 11th Floor<br>Boston, MA 02109<br><br>Telephone:  (617) 523-6666<br>Facsimile:   (617) 367-3125<br><br>[Counsel for Defendant] |